UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Timothy M. Miller II,

    Plaintiff,

v.

SBK Delivery, LLC,

    Defendant.

Case No. 2:21-cv-4744

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

Timothy M. Miller II ("Plaintiff") sues SBK Delivery, LLC ("Defendant") "for and in [sic] behalf of himself . . . and other employees similarly situated[,]" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for alleged unpaid overtime compensation. Compl., ECF No. 1. He alleges that he and other similarly situated employees were delivery drivers whom Defendant improperly classified as independent contractors and then failed to pay overtime. *Id.* ¶¶ 17–24.

In February of 2022, the parties stipulated to a grant of conditional certification and to the issuance of notice to the putative collective. Stipulation, ECF No. 17. Nineteen employees timely opted into the putative collective, and one attempted to opt in after the deadline. Notices, ECF Nos. 19–25. Two of the opt-in plaintiffs' claims were dismissed for failure to prosecute, however, Order, ECF No. 49, and only seventeen potential opt-ins remain.

Defendant then moved to decertify the collective, Mot. Decertify, ECF No. 57, and for summary judgment, Mot. Summ. J., ECF No. 81. Plaintiff moved for partial summary judgment, Mot. Part. Summ. J., ECF No. 85, and opposed Defendant's summary judgment motion. Resp., ECF No. 97.

The Court then notified the parties that there was no collective to "decertify" because Plaintiff had not yet conclusively shown, pursuant to *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), that the remaining seventeen opt-ins were, in fact, similarly situated to Plaintiff. Order, ECF No. 105. The parties asked to brief whether the opt-in plaintiffs were similarly situated, Joint Notice, ECF No. 106, and that briefing is now complete.

## I. FACTS

The following facts are taken from the declaration of Defendant's co-owner, Bradley Kantor, and are not disputed. Defendant supplied package delivery drivers for other companies, whom it calls Master Contractors ("MCs"). Kantor Decl. ¶ 1, ECF No. 78-1. The MCs pertinent to the timeframe here were Watco, Need it Now, and Lasership. *Id.* In exchange for Defendant providing them with delivery drivers, the MCs would pay Defendant for each package delivered by those drivers. *Id.* Defendant, in turn, would pay each driver a percentage of the payment it received from the MCs for that driver's delivery. *Id.* ¶ 2. The drivers were classified as independent contractors and were not paid overtime for hours worked in excess of forty in a workweek. *Id.* ¶¶ 6–9.

## II. ANALYSIS

In the Sixth Circuit, "other employees become parties to an FLSA suit (as opposed to mere recipients of notice) only after they opt in and the district court determines—not conditionally, but conclusively—that each of them is in fact similarly situated to the original plaintiffs." *Clark*, 68 F.4th at 1009 (cleaned up).

Here, the opt-ins gave their written consent to become parties to this suit and filed the same with the Court. Consents, ECF Nos. 19–24. The issue is whether Plaintiff has conclusively shown that they are similarly situated to him for purposes of proceeding collectively in this lawsuit.

To determine whether the opt-ins are similarly situated to Plaintiff, the Court considers: "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject; and (3) the degree of fairness and procedural impact of" proceeding collectively based on representative evidence. *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (cleaned up). Importantly, the putative plaintiffs need not be "identically situated" to Plaintiff to be similarly situated. *Monroe v. FTS USA LLC*, 860 F.3d 389, 402 (6th Cir. 2017) (internal quotation marks and citation omitted). The FLSA standard for similarly situatedness is less stringent than Rule 23(b)(3)'s standard, which requires common issues to predominate over individual issues. *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584–85 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *see also Monroe*, 860 F.3d at 402.

A. Factual and Employment Settings of the Individual Plaintiffs

This factor considers such things as whether the workers: (1) held the same position, with the same job description and duties; (2) worked in the same geographic locations; (3) had the same supervisors; and (4) were subject to the same timekeeping and compensation policies. *Pierce*, 922 F.3d at 747 (citing *Monroe*, 860 F.3d at 402 (citation omitted)); *Clark*, 68 F.4th at 1010 (citing *Pierce*, 922 F.3d at 745–46). Whether there was a single FLSA-violating policy that applied to all opt-ins in the same way is also considered, although the lack of a single violative policy is not necessarily dispositive if there are at least common theories of the FLSA violation. *See Monroe*, 860 F.3d at 402; *O'Brien*, 575 F.3d at 585.

Here, Plaintiff and the opt-ins all worked for Defendant as delivery drivers. As it relates to Plaintiff and the opt-ins' status as employees or independent contractors *of Defendant*, the factual and employment settings appear to be virtually identical. Plaintiff and the opt-ins all signed the same version of an Independent Contractor Agreement ("Contract") with Defendant. Ans. Interrogatory 19, ECF No. 87-2 at PAGEID # 1179; Bradley Kantor Aff. ¶ 6, ECF No. 111-1; *see also* Sample Contract, ECF No. 87-3. The payment portion of the contract was not pre-filled, however, and the opt-ins' pay was approximately 50%[1] of what Defendant received weekly from MCs for the opt-ins' work. Bradley

---

[1] Some evidence suggests the pay was always 50%. Interrog. Nos. 23 & 24, ECF No. 87-2. Other evidence suggests the pay ranged from 45%–55%, depending on the

Kantor Aff. ¶ 6, ECF No. 111-1. But, aside from the compensation, the terms of Plaintiff's and the opt-ins' work vis-à-vis *Defendant* appear to be the same.

Nonetheless, despite Plaintiff and the opt-ins being similarly situated vis-à-vis the misclassification issue, individual differences are the sole factor in determining whether any given delivery driver ever worked overtime. Whether any given delivery driver worked overtime does not depend on the drivers' job description and duties, whether they worked in a particular geographic location or had the same supervisor, or whether they were subject to the same timekeeping and compensation policy. It depends, instead, on the whim of the delivery driver and whether he or she scheduled routes lasting more than forty hours in a given workweek.

Therefore, unlike donning and doffing cases, startup and shutdown cases, or even automatic lunch break cases, there is no unifying theory between Plaintiff and the opt-ins vis-à-vis whether they worked more than forty hours in any given workweek. Instead, whether one opt-in worked overtime is completely independent of whether any other opt-in worked overtime.

In this respect, this case differs significantly from donning and doffing, startup and shutdown, or automatic lunch break cases, where the testimony of

---

driver's contract. Kantor Decl. ¶ 2, ECF No. 78-1. Although Plaintiff argues that every opt-in's contract specified payment at a rate of 50%, see Reply 4, ECF No. 101, neither counsel seems to have pointed the Court to each opt-in's contract (if it is even available on the docket) to permit verification of that assertion. In any event, the dispute between whether drivers were paid 50% or 45–55% is immaterial to this Opinion and Order.

one or more workers with respect to the duties that resulted in overtime work *would* be fairly representative of the other employees, who worked similar shift lengths and were each required to perform the same off-the-clock duties or were subject to the same time-deduction policy. Here, only the misclassification portion of liability can be determined collectively. And, because the misclassification issue gets Plaintiff only partway toward liability, this is not a case where liability can be determined collectively but damages separately. The other half of the liability equation—whether any delivery driver ever worked overtime—cannot be decided collectively.

In this scenario, the Court concludes that the first consideration weighs against finding Plaintiff and the opt-ins similarly situated.

**B.     Different Defenses to which the Plaintiffs may be Subject**

Individualized defenses must be considered, but they "do not alone" defeat proceeding collectively "where sufficient common issues or job traits otherwise permit collective litigation." *Monroe*, 860 F.3d at 404 (citing *O'Brien*, 575 F.3d at 584–85)). Importantly, if "representative evidence [will allow] appropriate consideration of the individual defenses raised," then the individualized defenses will not defeat a finding that opt-ins are similarly situated. *Monroe*, 860 F.3d at 405, 406.

Here, for the reasons just addressed, representative evidence will permit appropriate consideration of the defenses to the misclassification issue but not to the issue of whether Plaintiff or any other opt-in worked overtime. Accordingly,

the Court concludes that this factor similarly weighs against proceeding collectively.

### C. Degree of Fairness and Procedural Impact of Proceeding Collectively

This factor asks whether proceeding collectively will further "the policy behind FLSA collective actions and Congress's remedial intent by consolidating many small, related claims of employees for which proceeding individually would be too costly to be practical." *Monroe*, 860 F.3d at 405 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). In so considering, the Court is reminded that "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact[.]" *Hoffman-La Roche*, 493 U.S. at 170.

Here, proceeding collectively will certainly further the goal of consolidating small claims that could be cost prohibitive for plaintiffs to pursue individually.

Moreover, it would be efficient to resolve on a group-wide basis whether Plaintiff and the opt-ins were Defendant's employees or were independent contractors. This is because the delivery drivers are all sufficiently similarly situated such that one legal determination as to classification would apply equally to Plaintiff and each opt-in.

However, if the Court concludes that drivers were employees, the Court will then have to perform eighteen individual analyses to complete the *liability* determination. This is because representative testimony on the amount of overtime worked is not available here, given that the accrual of overtime depends

*entirely* on the unique facts for each driver: whether a given driver worked any overtime, let alone how much, depends on facts unrelated to the other drivers.

Therefore, proceeding collectively will not increase efficiency when it comes to determining whether each plaintiff ultimately worked overtime and, if so, how much overtime that plaintiff worked. Instead, once the Court resolves the misclassification issue on a group-wide basis, the remainder of the liability and damages determination would effectively proceed as eighteen individual actions.

### D. Conclusion on Similarly Situatedness

The Sixth Circuit has made clear that the standard for proceeding collectively under § 216(b) is lower than the standard for Rule 20 joinder or for class certification under Rule 23. *O'Brien*, 575 F.3d at 584–85 (explaining that the similarly situatedness analysis is less stringent than the Rule 23 class certification analysis and that "a collection of individualized analyses is required of the district court" in FLSA cases); *Monroe*, 860 F.3d at 397 ("Based on our precedent, then, the FLSA's "similarly situated" standard is less demanding than Rule 23's standard.").

Still, "[t]he heart of the matter is whether the plaintiffs should be permitted to bring their claims of liability and damages as a group based on representative, rather than personal, evidence." *Pierce*, 922 F.3d at 745; *Monroe*, 860 F.3d at 417 ("[T]he core inquiry [is]: Are plaintiffs similarly situated *such that* their claims of liability and damages can be tried on a class-wide and representative basis?"

(Sutton, J., dissenting)). To that end, "[a] common policy cannot overcome the factual differences between [employees], which goes to determining the heart of the claim (the total hours worked each week)." *Pierce*, 922 F.3d at 747; *Monroe*, 860 F.3d at 419 ("the theory—at a vertigo-inducing height of generality—that the defendants violated the overtime provisions of the FLSA" like "a company-wide policy of violating the FLSA" simply "does not do the trick." (Sutton, J., dissenting)). In other words, some individual factual differences in the number of hours worked are inherent in proceeding collectively; it will be the rare case where every opt-in worked the same amount of overtime. But, where individual factual differences in the number of hours worked precludes the ability to rely on representative evidence, employees are not similarly situated. *Pierce*, 922 F.3d at 747 (rejecting the plaintiffs' theory of "a uniform policy against paying . . . overtime" and concluding that certain resort workers were not similarly situated to other workers because those workers did not perform the same duties as the others *and therefore did not generally work the same hours*); *id.* ("The end-all and be-all of a collective action is to determine the average number of hours each individual worked per week.").

Here, there is no common policy or theory of violation that caused Plaintiff and the opt-ins to accrue generally the same amount of overtime. Accordingly, they could not utilize representative evidence to show the general amount of unpaid overtime. The purpose of proceeding collectively thus does not exist here, and the Court concludes that Plaintiff has not conclusively demonstrated

that he is similarly situated to the opt-ins. The Court therefore **DISMISSES WITHOUT PREJUDICE** each of the opt-in's claims.

### III. CONCLUSION

For the above reasons, Plaintiff's motion, ECF No. 108, is **DENIED**. The Court **DISMISSES WITHOUT PREJUDICE** each of the opt-in's claims. Because the Court need not consider ECF No. 87-18 given the dismissal of the opt-ins' claims, the Court **DENIES AS MOOT** Defendant's motion to strike the same, ECF No. 100.

The Court will rule in separate orders on the summary judgment issues as they relate only to Plaintiff. The Clerk shall terminate ECF Nos. 100 and 108.

**IT IS SO ORDERED.**

_/s/ Michael H. Watson_
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**